IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

INTENATIONAL PAINTERS AND    *
ALLIED TRADES INDUSTRY
PENSION FUND and GARY J.         *
MEYERS, *in his official capacity as fiduciary*,

                              *

     Plaintiffs,

                              *

       v.                            Civil Action No. RDB-12-1641

                              *

CAPITAL RESTORATION &
PAINTING CO., *doing business as*     *
CAPITAL RESTORATION &
PAINTING COMPANY, *doing business*   *
*as* CAPITAL RESTORATION

                              *

     Defendant.

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

## MEMORANDUM OPINION

Plaintiffs International Painters and Allied Trades Industry Pension Fund ("Pension

Fund") and Gary J. Meyers, in his official capacity as a fiduciary on behalf of the Pension

Fund ("Mr. Meyers;" together with the "Pension Fund", "Plaintiffs"), have filed suit against

the Defendant Capital Restoration & Painting Co., doing business as Capital Restoration &

Painting Company and Capital Restoration ("Defendant" or "Capital Restoration"). The

Plaintiffs move, under sections 502(g)(2) and 515 of the Employee Retirement Income

Security Act ("ERISA"), 29 U.S.C. §§ 1132(g)(2), 1145, and section 301 of the Labor

Management Relations Act, 29 U.S.C. § 185(a), for unpaid contributions, interest on those

unpaid contributions, liquidated damages, audit costs, and attorneys' fees and costs incurred

by the Pension Fund pursuant to the collective bargaining agreement and trust agreement

between the Defendant and the International Painters and Allied Trades Industry. *See*

1

Complaint, ECF No. 1.  Because the Defendant has failed to appear, answer, plead, or otherwise defend in this matter, the Plaintiffs now seek an entry for default judgment against the Defendant pursuant to Rule 55 of the Federal Rules of Civil Procedure.  For the reasons that follow, the Motion for Default Judgment filed by the Plaintiffs (ECF No. 7) is GRANTED.  Judgment in the amount of $6,214.19 SHALL BE ENTERED for unpaid contributions, interest, liquidated damages, and audit costs, against the Defendant Capital Restoration & Painting Co., doing business as Capital Restoration & Painting Company and Capital Restoration.  Attorneys' fees and costs SHALL BE ENTERED in the amount of $4,017.48 and SHALL BE INCLUDED in the judgment.  Additionally, post-judgment interest, calculated in accordance with 28 U.S.C. § 1961, will continue to accrue on the contract claim and judgment.  Thus, the total amount of damages awarded to the Plaintiffs is $10,231.67, plus post-judgment interest.

## BACKGROUND

The following facts are alleged in the Plaintiffs' Complaint (ECF No. 1).  Plaintiff International Painters and Allied Trades Industry Pension Fund ("Pension Fund") is a trust fund established under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 186(c)(5).[1]  Compl. ¶ 5.  Plaintiff Gary J. Meyers ("Meyers;" together with the "Pension Fund," "Plaintiffs") is a fiduciary of the Pension Fund.  *Id.* ¶ 6.  The Plaintiffs are authorized to sue on behalf of the Pension Fund's pension plan ("Pension Plan"), which qualifies as a multi-employer plan, an employee benefit plan, and an employee benefit pension under ERISA, 29 U.S.C. § 1002(2), (3), (37).  Compl. ¶ 7.

---

[1] Section 186 of Title 29, which corresponds to section 302 of the Labor Management Relations Act, regulates employee benefit plans that involve the use of employee contributions.  29 U.S.C. § 186(c).

Defendant Capital Restoration is a party to a collective bargaining agreement and trust agreement (together, the "Labor Contracts") with the International Painters and Allied Trades Industry (the "Union").   Montemore Aff. ¶ 5, Ex. 7-3.   These Labor Contracts require Capital Restoration to make monthly contributions to the Pension Fund based on the hours for which Capital Restoration's employees, subject to the Union's collective bargaining agreement, are paid.   Montemore Aff. ¶ 6; Working Agreement Art. XXVII, ECF No. 7-4.   If Capital Restoration fails to meet these obligations, it agrees to pay liquidated damages, interest, audit costs, and all costs of litigation expended by the Pension Fund to collect unpaid contributions.   Montemore Aff. ¶ 7; Working Agreement Art. XXVII, § 27.4.

From January 1, 2008, through March 31, 2011, Capital Restoration failed to make timely payment of fringe benefit contributions in violation of the Labor Contracts. Montemore Aff. ¶ 7.   On June 4, 2012, the Plaintiffs filed a Complaint against Capital Restoration seeking $6,139.86 in unpaid contributions, interest, liquidated damages, and audit costs under sections 502(g)(2) and 515 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132(g)(2), 1145, and section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a).   *See* ECF No. 1; Pls.' Ex. 4.   Additionally, Plaintiffs seek attorneys' fees and costs.   Because the Defendant did not file a response or any affirmative defenses, the Clerk of Court filed an entry of default on November 27, 2012.   *See* ECF No. 6.   As the Defendants have failed to appear, answer, plead, or otherwise defend in this matter, the Plaintiffs now seek an entry of default judgment against the Defendant pursuant to Rule 55 of the Federal Rules of Civil Procedure (ECF No. 7).

## STANDARD OF REVIEW

Entries of default and default judgments are governed by Rule 55 of the Federal Rules of Civil Procedure.  Rule 55(a) provides that "[w]hen a party . . . has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  If, after entry of default, the plaintiff's complaint does not specify a "sum certain" amount of damages, the court may enter a default judgment against the defendant pursuant to Rule 55(b)(2).  In considering a motion for default judgment, this Court accepts as true the well-pleaded factual allegations in the complaint as to liability.  *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780-81 (4th Cir. 2001).  However, "liability is not deemed established simply because of the default . . . and the court, in its discretion, may require some proof of the facts that must be established in order to determine liability."  10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2688 (3d ed. 1998); *see also Ryan*, 253 F.3d at 780-81.  Although the United States Court of Appeals for the Fourth Circuit has a "strong policy that cases be decided on the merits," *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993), default judgment "is appropriate when the adversary process has been halted because of an essentially unresponsive party," *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005).

If the court finds that liability is established, it must then turn to the determination of damages.  *See Ryan*, 253 F.3d at 780-81.  The court must make an independent determination regarding damages and cannot accept as true factual allegations of damages.  *See Lawbaugh*, 359 F. Supp. 2d at 422.  Rule 54(c) of the Federal Rules of Civil Procedure limits the type and amount of damages that may be entered as a result of a party's default: "A default

judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Where a complaint does not specify an amount, "the court is required to make an independent determination of the sum to be awarded." *Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001) (citing *S.E.C. v. Mgmt. Dynamics, Inc.*, 515 F.2d 801, 814 (2d Cir. 1975)). In doing so, "[i]t is a familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly." *Pope v. United States*, 323 U.S. 1, 12 (1944). While the court may conduct an evidentiary hearing to determine damages, it is not required to do so; it may rely instead on affidavits or documentary evidence in the record to determine the appropriate sum. *See, e.g.*, *Mongue v. Portofino Ristorante*, No. WDQ-09-3144, 2010 WL 4629898, at *3-4 (D. Md. May 25, 2010) (collecting cases); *see also* 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2688 (3d ed. Supp. 2010).

## ANALYSIS

Because Capital Restoration has failed to appear or otherwise defend in this action and the Clerk of Court has filed entry of default, the requirements for ordering default judgment have been met. *See* Fed. R. Civ. P. 55(a), (b). As this Court has previously found, default judgment "is appropriate when the adversary process has been halted because of an essentially unresponsive party." *Lawbaugh*, 359 F. Supp. 2d at 421. For the reasons stated below, the Plaintiffs are entitled to default judgment. This Court first reviews the allegations supporting the Plaintiffs' cause of action and then determines the appropriate amount of damages. In determining damages, this Court finds that no evidentiary hearing is necessary

and instead relies on the affidavits and other evidence in the record to determine the appropriate sum. *See, e.g., Mongue v. Portofino Ristorante*, 2010 WL 4629898, at *3-4.

## I.     Cause of Action

In considering a motion for default judgment, this Court accepts as true the well-pleaded factual allegations in the complaint as to liability. *See Ryan*, 253 F.3d at 780-81. Nevertheless, this Court must determine "whether the well-pleaded allegations . . . support the relief sought in this action." *Id.* at 780.   The Plaintiffs show proof that under the collective bargaining agreement and trust agreement (together, the "Labor Contracts"), Capital Restoration agreed to make full and timely payment on a monthly basis to the Pension Fund. *See* Trust Agreement Art. VI, § 2, ECF 1-3; Pension Plan § 10.07, ECF No. 1-4; Montemore Aff. ¶ 6.   Capital Restoration also agreed to pay liquidated damages, interest, audit costs, and all costs of litigation expended by the Pension Fund to collect delinquent contributions. *See* Trust Agreement Art. VI, § 4.   In support of the Plaintiffs' claim that Capital Restoration violated the terms of the Labor Contracts, they filed the declaration of Thomas C. Montemore, the Assistant to the Fund Administrator of the Union and Pension Fund.   Mr. Montemore attests that he has personal knowledge of the Labor Contracts at issue in this case.   Montemore Aff. ¶ 3.   He states that Capital Restoration owes $4,203.66 in unpaid contributions for the period from January 1, 2008, through March 31, 2011, as well as interest on those unpaid contributions, liquidated damages, audit costs, and legal costs and fees.   Montemore Aff. ¶ 7.   The amount of unpaid contributions cited by Mr. Montemore is derived from an audit conducted on November 8, 2011. *Id.*

The unpaid contributions to which Mr. Montemore attests support the Plaintiffs' cause of action under the Employee Retirement Income Security Act ("ERISA") and the Labor Management Relations Act.  Specifically, the Plaintiffs bring suit under section 515 of ERISA, which states as follows:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145.  Moreover, section 502(g) of ERISA, on which the Plaintiffs also rely, states that in an action under section 1145 in which judgment is awarded in favor of the pension plan, the court shall award the following: (1) unpaid contributions; (2) interest on the unpaid contributions; (3) liquidated damages in "an amount equal to the greater of . . . (i) interest on the unpaid contributions, or . . . (ii) liquidated damages provided for under the plan not in excess of 20 percent" of the unpaid contributions; (4) reasonable attorneys' fees and costs; and (5) "such other legal and equitable relief as the court deems appropriate."  29 U.S.C. § 1132(g)(2).  The Supreme Court has found that these sections of ERISA "provide trustees of multiemployer benefit plans with an effective federal remedy to collect delinquent contributions."  *Laborers Health & Welfare Trust Fund for Northern Cal. v. Advanced Lightweight Concrete Co.*, 484 U.S. 539, 541 (1988).  The Court of Appeals for the Fourth Circuit has likewise found that in an action based on section 515 of ERISA, "a multiemployer plan can enforce, as written, the contribution requirements found in the controlling documents."  *Bakery & Confectionery Union & Indus. Int'l Pension Fund v. Ralph's Grocery Co.*, 118 F.3d 1018,

1021 (4th Cir. 1997).   Therefore, the Plaintiffs well-pleaded factual allegations support the

relief requested.

The Plaintiffs also sue under section 301 of the Labor Management Relations Act, 29

U.S.C. § 185(a).   Section 301(a) states as follows:

> Suits for violation of contracts between an employer and a labor
> organization representing employees in an industry affecting
> commerce as defined in this chapter, or between any such labor
> organizations, may be brought in any district court of the
> United States having jurisdiction of the parties, without respect
> to the amount in controversy or without regard to the
> citizenship of the parties.

29 U.S.C. § 185(a).   Section 301(a) is the original source of pension fund collection suits in

federal court.   *See, e.g.*, *Lewis v. Benedict Coal*, 361 U.S. 459, 470 (1960).   Employee benefit trust

funds and fund trustees have standing to sue under section 185(a) as third-party beneficiaries

of a collective bargaining agreement.   *See, e.g.*, *Chicago Plastering Inst. Pension Trust Fund v.

William A. Duguid Co.*, 761 F. Supp. 1345, 1347 n.2 (N.D. Ill. 1991).   Plaintiffs allege that

Capital Restoration was a party to the Labor Contracts with the Union, and was required,

under those contracts to make monthly payments to the Pension Fund.   This dispute—a suit

for violation of labor contracts—can thus be remedied under Section 301, and the Plaintiffs,

who are the Pension Fund and its fiduciary, have standing to sue.   For these reasons, Section

301 also provides a basis for the Plaintiffs' suit, and their well-pleaded factual allegations

support the relief they request.

## II.    Damages

In this ERISA action, the Plaintiffs are entitled to the following damages: the amount

of the Defendant's unpaid contributions; interest on those unpaid contributions; an amount

equal to the greater of (1) the interest on the unpaid contributions or (2) liquidated damages provided for under the plan and not in excess of 20 percent of the unpaid contributions; reasonable attorneys' fees and costs; and other legal and equitable relief this Court deems appropriate. *See* 29 U.S.C. § 1132(g)(2). In support of the Plaintiffs' request for unpaid contributions, interest, liquidated damages, and audit costs, they submit the declaration of Mr. Montemore, *see* Montemore Aff., ECF No. 7-3, as well as the Labor Contracts and Pension Plan, *see* Working Agreement, ECF No. 7-4; Trust Agreement, ECF 1-3; Pension Plan, ECF No. 1-4. In support of their request for reasonable attorneys' fees and costs, they submit the affidavit of Bridget C. Walsh, Esquire, an attorney assigned to this case, *see* Walsh Aff., ECF No. 7-5, as well as an Altman Weil Survey on average hourly billing rates for lawyers, *see* ECF No. 7-6, and an Ohio State Bar Association survey on law firm economics, *see* ECF No. 7-7. The Plaintiffs assert that Capital Restoration owes $4,203.66 in unpaid contributions; $548.99 in interest; $840.73 in liquidated damages; $620.81 in audit costs; and $4,017.48 in attorneys' fees and costs, for a total damages award of $10,231.67.

A. Unpaid Contributions

Mr. Montemore, the Assistant to the Fund Administrator of the Union and Pension Fund, attests that he has personal knowledge of the Labor Contracts at issue in this case and that Capital Restoration owes $4,203.66 in unpaid contributions for the period from January 1, 2008, through March 31, 2011. Montemore Aff. ¶¶ 3, 7. This amount of unpaid contributions derives from an audit conducted on November 8, 2011. *Id.* ¶ 7. After reviewing the competent evidence in support of this figure, this Court awards the Plaintiffs $4,203.66 in unpaid contributions.

B. <u>Interest</u>

Because Capital Restoration failed to make its monthly contributions to the Pension Fund, the Plaintiffs are also owed interest on those unpaid contributions.  ERISA provides for an award of interest on unpaid contributions "determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of title 26."  29 U.S.C. § 1132(g)(2).  The Labor Contracts indicate that the rate prescribed under 26 U.S.C. § 6621 is to be used to determine interest.  *See* Pension Plan § 10.12(b)(2) (providing that interest on unpaid contributions is determined "at the rate for underpayment of federal income taxes under IRC 6621"); Working Agreement Art. XXVII, § 27.4; Montemore Aff. ¶ 7(b).  Section 6621 establishes the federal "underpayment rate" as the sum of "the Federal short-term rate" plus "3 percentage points."  26 U.S.C. § 6621(a).  Applying this interest rate, the Plaintiffs submit that they are owed $548.99 in interest, from the date that Capital Restoration's contributions became due through November 29, 2012.  After reviewing the competent evidence in support of this figure, this Court awards the Plaintiffs $548.99 in interest.

Additionally, the Plaintiffs assert that they are entitled to post-judgment interest in accordance with 28 U.S.C. § 1961.  This interest is calculated, from the date of the entry of the judgment, at a rate "equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of judgment."  28 U.S.C. § 1961(a).  "Interest shall be allowed on any money judgment in a civil case recovered in a district court."  *Id.*; *see also I.A.M. Nat. Pension Fund, Plan A, A Benefits v. Slyman Indus.*, 704 F. Supp. 301, 302-03 (D.D.C.), *aff'd*, 901 F.2d 127, 139 (D.C. Cir. 1990).  Accordingly, this post-judgment interest, calculated in

accordance with 28 U.S.C. § 1961, will continue to accrue on the contract claim and judgment.

    C.  Liquidated Damages

Section 10.12 of the Pension Plan mirrors the language of section 515 of ERISA, 29 U.S.C. § 1132(g)(2), which requires an employer that is delinquent on monthly contributions under the plan to pay liquidated damages equal to the greater of (1) the amount of interest on the unpaid contributions or (2) an amount of liquidated damages not in excess of 20 percent of the unpaid contributions. *See* Pension Plan, § 10.12(b)(3); 29 U.S.C. § 1132(g)(2)(C). As noted above, the total interest is $548.99. Twenty percent of the unpaid contributions is $840.73. An amount of liquidated damages equal to twenty percent of the unpaid contributions is therefore greater than the amount of interest in this case and should be awarded to the Plaintiffs. After reviewing the competent evidence in support of the figure that the Plaintiffs request, this Court awards the Plaintiffs $840.73 in liquidated damages.

    D. Audit Costs

The Labor Contracts provide for recovery of audit costs in the event that an audit of an employer's payroll books and records reveals a delinquency in payments to the Pension Fund. *See* Trust Agreement Art. VI, § 6; Working Agreement Art. XXVII, § 27.46. On November 8, 2011, the Pension Fund conducted an audit of Capital Restoration's books and records and determined that there was a delinquency during the period from January 1, 2008, through March 31, 2011. Montemore Aff. ¶ 7(d). The Plaintiffs submit that they are owed $620.81, the amount the Pension Fund spent in conducting the audit. *Id.* After reviewing

the competent evidence in support of this figure, this Court awards the Plaintiffs $620.81 in audit costs.

E.  Attorneys' Fees and Costs

"In an ERISA action, a district court may, in its discretion, award costs and reasonable attorneys' fees to either party under 29 U.S.C. § 1132(g)(1), so long as that party has achieved some relative degree of success on the merits." *Williams v. Metropolitan Life Ins. Co.*, 609 F.3d 622, 634 (4th Cir. 2010) (citations omitted).  The Labor Contracts likewise provide for payment of attorneys' fees and costs incurred in the Pension Fund's collection of a delinquency.  *See* Working Agreement Art. XXVII, § 27.4.  The Plaintiffs submit that in seeking to collect unpaid contributions from Capital Restoration they have incurred attorneys' fees and costs in the amount of $4,017.48.  Montemore Aff. ¶ 7(e).  In support of this figure, the Plaintiffs filed the declaration of Bridget C. Walsh, an associate employed by Jennings Sigmond, P.C. and assigned to this case. Walsh Aff. ¶ 1, ECF No. 7-5.  The Plaintiffs also submitted an Altman Weil Survey on average hourly billing rates for lawyers, ECF No. 7-6, and an Ohio State Bar Association survey on law firm economics, ECF No. 7-7.

The Supreme Court has established a method, commonly called the "lodestar," for determining a reasonable fee.  The starting point in the lodestar calculation is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).  In addition, the specific facts of the case are to be considered in calculating a reasonable figure.  The Court has endorsed a list of twelve factors, first articulated by the Court of Appeals for the Fifth Circuit in *Johnson v. Georgia*

*Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), which aid a court in determining a reasonable fee. These factors include the following:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 717-719. The Court of Appeals for the Fourth Circuit has directed courts to consider these twelve factors when calculating the lodestar amount. *Robinson v. Equifax Info. Servs.*, 560 F.3d 235, 243-44 (4th Cir. 2009).

Applying the lodestar method to the Plaintiffs' request, this Court determines that fees and costs in the amount of $4,017.48 are reasonable and should be awarded to the Plaintiffs in this case. The Plaintiffs' attorneys billed at an hourly rate of $220.00; the legal assistants billed at an hourly rate of $70.00. Walsh Aff. ¶ 3. The associate attorneys have practiced law for approximately eight to nine years. *Id.* ¶¶ 5-7. These rates fall within the range of reasonable hourly rates provided in the "Rules and Guidelines Determining Lodestar Attorneys' Fees" ("Local Guidelines"), which are a component of the Local Rules for the District Court of Maryland. D. Md. Loc. R. App'x B. Specifically, the Local Guidelines advise that a reasonable hourly rate for an attorney admitted to the bar for five to eight years is $165 to $250. *Id.* § 3. Additionally, the Local Guidelines advise that a reasonable hourly rate for a paralegal is somewhere between $95 and $115. *Id.* The associates' hourly rate of $220 is within the range of reasonable rates, and the legal assistants'

hourly rate of $70 is below the Local Guidelines' range.  *See id.*  Accordingly, this Court finds these hourly rates to be reasonable.

The Plaintiffs also submitted an itemization of legal fees and costs.  *See* Pls.' Ex. 7, ECF No. 7-9.  This itemization shows that the attorneys billed a total of 17.8 hours—2.8 hours in case development and background investigation; 7.1 hours in preparing pleadings; and 7.9 hours in motions practice.  These hours are reasonable considering the complexity of the case and the amount of labor required to initiate the case, take the necessary procedural steps in moving for default judgment, and prepare sufficient evidence in support of the damages requested.  Moreover, the requested costs—for computer research; filing and service fees; photo copies; and shipping and postage charges—are of the type normally incurred in preparing a case for litigation. Considering the competent evidence provided by the Plaintiffs in conjunction with the Court's Local Guidelines and the twelve *Johnson* factors, this Court determines that the Plaintiffs' requested fees and costs, which total $4,017.48, are reasonable.  For this reason, attorney's fees and costs in the amount of $4,017.48 are awarded to the Plaintiffs and are included in the judgment.

<u>CONCLUSION</u>

For the reasons stated above, the Motion for Default Judgment filed by the Plaintiffs (ECF No. 7) is GRANTED, and judgment in the amount of $6,214.19 SHALL BE ENTERED, for unpaid contributions, interest on the unpaid contributions, liquidated damages, and audit costs, against the Defendant Capital Restoration & Painting Co., doing business as Capital Restoration & Painting Company and Capital Restoration.  Attorneys' fees and costs SHALL BE ENTERED in the amount of $4,017.48 and SHALL BE

INCLUDED in the judgment.   Thus, the total amount of damages awarded to the Plaintiffs is $10,231.67.   Post-judgment interest, calculated in accordance with 28 U.S.C. § 1961, will continue to accrue on the contract claim and judgment.

A separate Order follows.

Dated:          January 24, 2013                    _____/s/_____

Richard D. Bennett
United States District Judge